May it please the court. My name is John Seidlitz. I have the privilege to represent Robin Napier here before the court. For the students watching, I've been practicing for 38 years. And every time I come before this court, my knees get weak and I get nervous. And so that's a normal thing. For the court, I would point out if I stutter or stammer, it's partly because of that nerves. I never get over it here. Robin Napier is a applicant for Social Security Disability Benefits. She had applied for SSD and SSI in September of 2014. Her birth date was wrong in the magistrate's order, but she was 60 at the time of her application. There was a hearing in September of 16, September 14. Somewhat of a significance, because September 20 of 16, she underwent right knee surgery. And the judge was aware of that. The judge found that she had severe impairments, heart-related coronary artery disease, degenerative disc disease. Rather a broad finding. We don't know if the judge felt that was cervical, thoracic, or lumbar. And it was lumbar. Obesity and osteoarthritis. Diabetic polyneuropathy, peripheral neuropathy for those of us that are old, in the hands and feet was not found to be an impairment. That's one of the errors that the ALJ made and the district court missed, simply ignored. I don't know how you ignore that. It's one of the issues we have going on in the district courts with these facts that we file in our briefs and the government attorneys don't file. So they don't really dispute the fact that she has peripheral numbness. The medical records, October 16, July 16, back to November 15. Mr. Seidlitz, is your point that having collateral or the neuropathy impairment that you're discussing qualifies as a matter of law as a Step 3 severe impairment? Yes, it's a Step 2 impairment, Step 3. And it needs to be considered at Step 5 in being provided to the vocational consultant, which it was not. You're not contending that it was a listed impairment, are you?  Not contesting a listing. So just in response to Judge Bea's question, I want to make sure I'm not losing the train of thought. You think it was a severe impairment and it should have been incorporated into the residual functional capacity assessment? Yes, absolutely. Is there a place in the record where she testified about how this limited her? She talks about the fact that when it bothers her, the only things that she can do is that she constantly moves her feet. And can you work with that? I don't know. That should have been submitted. But the real problem is, she says, I try to think about something other than the pain in my feet. And one of the problems vocational consultants consistently testify about is whether you're staying on task, whether you can focus, whether you can concentrate. And so if you're dealing with some type of job activity and you're tapping your feet because they're hurting so bad and you're trying to think anything else, are you going to be able to focus on the matter at hand? Could you give me the two record sites that you just mentioned? In terms of the numbness or the discussion about? Effects of neuropathy. The effects of neuropathy is ER1 at 229. The quote was, pins and needles in feet and hands all the time. Constantly move or tap feet. Try to think of something other than pain in her feet. OK. So all of that is in the one citation you gave me? Yes. OK. Thank you. So the failure to include that allows the judge to do two things. One, he can find that she's not credible. And so we can disregard her testimony because. Or you can find that she's not credible about her complaints about pins and needles in fingers and feet. Well, and you can use that to say, because she has testified that. She's testified she's doing those things. And I do not find that's a problem. So I can deny you credibility because you're complaining about things that don't exist. Isn't your bigger problem that there's other reasons to doubt her credibility? And therefore, even though she reports neuropathy, and I think the medical records do too, that there's reason to doubt the, I mean, to the extent that the effect of neuropathy is dependent upon her testimony, then there's reason to doubt that? Well, I think first you need to consider that and then ask the ALJ to give you those specifics to identify why it should be doubted. And those don't exist in the record. Because if you don't consider it as a severe impairment, then you don't need to go back and say, I'm going to disregard the testimony, which this circuit has repeatedly told these administrative judges. If you're going to disregard her testimony about not focusing and tapping her feet, you need to point to the specific record that identifies why you don't believe that. And there is none here because the medical records show she's got that numbness and tingling in her feet and her hands, but in her feet especially. The knee issue, I mean, she has surgery on the right knee a week, six days, I think, after the hearing. And in terms of finding that she was able to do substantial gainful activity, the records show, because of heart issues, she had dodged this knee replacement six years before. So I don't know from reviewing the records how the administrative law judge found her testimony as to her knee complaints, which she says she would elevate, she'd recline, get her knee up in the air for the pain, how you can deny that credibility when it's a condition that required surgery six years before and she ultimately underwent the surgery, overcame the heart issues, the fear of the heart issues that I think she faced. She testified that she could only stand for five to 10 minutes because the knee would burn and she'd elevate the knee to avoid cramping. The judge found that because her diabetes was under control, she didn't have peripheral neuropathy as an impairment. I don't know how you get there. There's no medicine behind that statement. Just because your diabetes gets under control doesn't mean the sequelae of diabetes is solved. I mean, it's a progressive disease. It doesn't get better. There's no doctor that says it should get better. The ALJ relied upon an independent doctor, Dr. Donaldson, to say that, you know, I don't think she's given me a consistent effort here. Donaldson didn't even find the peripheral neuropathy, which is uncontested in the record. So if he's ignoring one of the medical conditions she's presenting with, it's easy to say, I don't think she's putting out as much as she could. The independent doctor's the only one who found that there was any ability to do SGA. The treating nurse practitioner, and we're dealing with rules before Social Security recognized them as medical experts, and so we have to accept that here, but the nurse practitioner found her condition is bad enough. She can't work. Donaldson ignores the peripheral neuropathy. He goes on to say, I think she ought to be able to do at least some kind of seated or light work part-time, you know, maybe full-time. So the ALJ latches onto that and says, this person can do full-time work because the doctor said, you know, there's a possibility they could do something. I think speculation has never been allowed by Article III courts. It's, you just can't speculate. I'd reserve the remainder of my time. Thank you. Thank you, sir. Good morning, Your Honors. Frederick Fripps for the Commissioner of Social Security. So Ms. Napier's appeal does focus on the neuropathy symptoms that she has alleged, and the commissioner, as did the district court, acknowledged findings of numbness throughout the record. That is not conceded, but, I mean, that is not an issue. Those are symptoms, however. None of these doctors prescribed any limitations related to these findings of numbness. And exams generally showed her gait as normal. She didn't have any difficulties walking. She's had multiple foot examinations where findings were found normal. And in fact, where her gait was found to be abnormal, Dr. Donaldson reported that in front of him, she showed significant difficulties walking, leaning on walls, leaning on her husband. But when she walked to her car, and she was not aware that she was being observed, she walked unassisted without any problems of gait. And this led Dr. Donaldson to believe that she had a disability conviction. Is it your position, Mr. Fripps, in essence, that the ALJ was justified in putting aside the complaints, the symptoms of neuropathy, because of the finding of lack of credibility implicit in Dr. Donaldson's observations? Yes, it was reasonable, because the only thing we have to go by are her symptoms. And when she demonstrated her abilities, these symptoms did not appear to limit her as much as alleged. And so Dr. Donaldson actually did note numbness in his examination at ER 517. He noted that numbness was mild. And the most restrictive opinion in the record from Nurse Fitz, she did not note neuropathy or numbness in her findings as a limiting factor. So plaintiff, I mean, excuse me, Ms. Napier demonstrated the ability to maintain the walking and standing requirements of light work. I know there was some issue with Ms. Napier's position that Dr. Donaldson found that she was capable of light work at least, but I think that is consistent with his notes that say, she showed less abilities than her true abilities. What about the point that Mr. Silas made that the experts, the RFC expert, wasn't given the fact of the neuropathy to put into his opinion? Well, the ALJ has to operate on the limitations assessed by doctors. The ALJ finds limitations credible, and there were no credible limitations stemming from the neuropathy to provide to the vocational expert. So lack of credibility is the reason that that wasn't put to the expert. Lack of credibility and lack of objective support for limitations, lack of opinion evidence. And in fact, the RFC does include some consideration of inability to use hands and feet as Ms. Napier is limited from climbing, handling bilaterally ladders, exposure to vibrations, and extreme cold. So the impairment was not totally left out of consideration. Was it included in the hypothetical? The ALJ provided a hypothetical that was identical to the RFC included in the decision. I'm just asking whether it included neuropathy, peripheral neuropathy. No, not that word. I don't think it did. And my understanding is that it didn't because, and your argument is that it didn't because she didn't convincingly testify that it limited her. And that no doctor found that it limited her. Yes. It's just that it's the type, I'm not trying to split hairs, but it's the type of symptom. Here's what I think the record says. I think the record says that she's reporting bilateral neuropathy and that they're not doubting that. And that there isn't anything other than her own testimony to go by to assess the extent to which it is a limiting factor, is that correct? That is correct. And as a symptom, lay people can understand that a symptom can be present without a limiting factor. Neuropathy is a range from extreme to mild and hers has been noted as mild multiple times throughout the record. And in regards to her knee impairment closer to the ALJ's decision, she had surgery and the physical therapy notes appeared to note that she showed improvement, her gait improved, and the neuropathic symptoms did not seem to affect her improvement. That was noted in the record. That was noted in the physical therapy notes at ER664. So the commissioner's position is substantial evidence supports the findings that the ALJ has made. There's no reason for the ALJ's findings to be re-adjudicated. Ms. Napier has not shown error in the ALJ's findings. And if there are no additional questions, I'll waive the remainder of my time. Thank you very much. Mr. Silas. Thank you. I would just address two things in the short amount of time I have here. Excerpts of record three, 583 to 588 include a neurological exam of the feet with a monofilament abnormal finding on the right foot. So there's objective evidence they're finding this. This isn't just her saying my hands and feet are tingling. As to the only evidence the secretary, excuse me, the commissioner, that's how old I am, the commissioner has in front of her when they make the ALJ decision is that, and the defendant argues this at page eight of the brief, Dr. Donaldson wrote, quote, it is possible that the abilities demonstrated may not represent her maximal capacity, close quote. So that's what the commissioner's standing here before asking this court to adopt as the standard for medical records that can be relied upon for a finding is a possibility. That's what we've got here. If that was really the question, the ALJ had a duty to develop the record, get more information from it, send them back for another medical exam. There's lots that could have been done. Thank you, Your Honor. Did you want to comment before we sit on Dr. Davidson's observation of her walking without any problem when she didn't know she was being observed? You know, it was not explored at the hearing. It's one of those things when you go in, you don't know what the ALJ is going to focus on and what they latch onto to find is something significant. One of the things that happens when you've got numbness in the feet is you've got to watch where your feet are. You've got to know where they are because you just don't have that propriony sense. You don't know where they're at. And so if you're in a closed room, if you're in an area where there are things close to you that you can fall against and you're not looking at your feet because I'm trying to look at a doctor or nurse or somebody, you can feel along and hold yourself up. When you get out to a parking lot where you have a big open area and I can watch where my feet are, it's possible to walk. And that's one of the things that I think is consistent in her testimony is that numbness, when you have that problem with walking, requires you to look at your own feet. And I think that shows it's really going on here. Thank you. Thank you. All right, the case of Napier versus Saul is marked submitted and we thank you for your oral argument.
judges: Farris, Bea, Christen